UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARITY MICHELLE AKIN,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL[1],<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:19-cv-0608 JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF CHARITY MICHELLE AKIN |

Charity Michelle Akin asserts she is entitled to disability insurance benefits and a period of disability under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating her medically determinable impairments at step two and the lay witness statement offered by her mother. For the reasons set forth below, the administrative decision is **AFFIRMED**.

**BACKGROUND**

In March 2015, Plaintiff filed her applications for benefits, alleging she came disabled in February 2012 due left Bipolar disorder, anxiety disorder, depression, and headaches. (Doc. 11-7 at 2; Doc. 11-8 at 6) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 11-5 at 43-63) Plaintiff requested an administrative hearing on the application and testified before an ALJ on August 31, 2017. (*See* Doc. 11-3 at 34) The ALJ determined

---

[1] This action was originally brought against Nancy Berryhill in her capacity as then-Acting Commissioner. (*See* Doc. 1) Andrew M. Saul, who is now the Commissioner, has been automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

Plaintiff was not disabled and issued an order denying benefits on January 25, 2018. (*Id.* at 34-44) Plaintiff requested review of the decision with the Appeals Council, which denied the request on December 17, 2018. (*Id.* at 13-15) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date February 2, 2012. (Doc. 11-3 at 36) Second, the ALJ found Plaintiff's severe impairments included: "cervical spondylosis, rotator cuff syndrome, epilepsy, spinal osteoarthritis, bipolar disorder, lumbar radioculopathy, and migraine headaches." (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 37-38) Next, the ALJ found:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CRF 404.1567(b) except the individual is able to climb ramps and stairs on an occasional basis and is never able to climb ladders, ropes and scaffolds. The individual is able to occasionally balance, crawl, crouch, kneel and stoop, and is able to reach overhead bilaterally on an occasional basis. The individual should not work in environments exposing them to unprotected heights or machinery with moving mechanical parts, and is capable of performing jobs in a non-complex nature requiring the performing of no more than simple, repetitive tasks. The individual is able to maintain occasional contact with supervisors and members of the general public, and is capable of maintaining occasional, non-collaborative contact with co-workers.

(*Id.* at 38-39) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work." (*Id.* at 42) At step five the ALJ found "there are jobs that existed in significant numbers in the national economy that the claimant could have performed" through her date last insured, such as cleaner, sewing machine operator, and electronics worker. (*Id.* at 43) Thus, the ALJ concluded Plaintiff was not disabled from the alleged onset date of February 2,

2012 though her date last insured on June 30, 2016. (*Id.* at 44)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical evidence, by "failing to address Plaintiff's fibromyalgia and assess whether it is a severe impairment" and relying on his own interpretation of the evidence rather than obtaining additional medical opinions. (Doc. 14 at 1, *see also id.* 6-9) In addition, Plaintiff asserts the ALJ "improperly discounting the opinion from Ms. Horn, a third-party witness, without proper evaluation as required by the regulations." (*Id.* at 9)

### A.     Step Two and Plaintiff's Fibromyalgia

The inquiry at step two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). A claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. § 404.1520(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a).

#### 1.     Medically determinable impairment

The Ninth Circuit determined that a diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists, and symptoms by themselves are not sufficient to establish such an impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005). Here, Plaintiff asserts the ALJ erred by failing to address her fibromyalgia and argues it was a medically determinable impairment. (Doc. 14 at 6-7) On the other hand, the Commissioner argues the record does not support a conclusion that fibromyalgia was a medically determinable impairment. (Doc. 19 at 11-17)

"Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quotation marks and citation omitted). Symptoms may include "chronic pain

throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with [the] disease." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).  Notably, "there are no laboratory tests to confirm the diagnosis." *Id*. Thus, the Ninth Circuit observed that fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.*  In general, an individual "can establish fibromyalgia as a medically determinable impairment diagnosed fibromyalgia and the claimant meets either the 1990 American College of Rheumatology ('ACR') Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria for fibromyalgia."  *Lara v. Berryhill*, 2017 WL 1179165 at *4 (E.D. Cal. Mar. 28, 2017) (citing Social Security Ruling[2] 12-p, 2012 WL 3104869 at *2-3).

Under the 1990 Criteria, the evidence must demonstrate: (1) "a history of widespread pain . . . that has persisted . . . for at least 3 months;" (2) at least 11 positive tender points, found both bilaterally and above and below the waist; and (3) evidence that other disorders that could cause the symptoms were excluded. SSR 12-p, 2012 WL 3104869 at *2-3. Under the 2010 Criteria, the evidence must show: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders which could cause the symptoms were excluded. *Id.* The physician's diagnosis must not be "inconsistent with the other evidence in the person's case record." *Id.* at *3.  Evidence that other disorders were excluded "may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).  *Id.* at *2

Prior to the issuance of SSR 12-p, the Ninth Circuit indicated the diagnosis of fibromyalgia by a rheumatologist may support a conclusion that a claimant's impairment is a medically determinable impairment, because "because it is an 'opinion of a specialist about medical issues related to his or her area of specialty.'" *Contreras v. Astrue,* 378 Fed. App'x 656, 658 (9th Cir. 2010) (quoting *Benecke*, 379 F.3d at 590, 594)  Thus, a rheumatologist's diagnosis—coupled with an opinion of the physician that the claimant "had tender points in a 'widespread distribution' satisfying the 'ACR criteria for

---

[2] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

fibromyalgia'"— was sufficient to show a medically determinable impairment, though the physician "had not specified the number or location of her tender points." *Contreras*, 378 Fed. App'x at 657-58.

Plaintiff notes that Dr. Maria Perez Cunanan diagnosed Plaintiff with fibromyalgia on February 7, 2016. (Doc. 14 at 3, citing Doc. 11-20 at 56) Dr. Cunanan noted Plaintiff "present[ed] with joint pain." (*Id.*) In addition, under the "subjective" section of the treatment notes, Dr. Cunanan noted the "joints affected include[d] the lumbar spine, shoulders, elbows, wrists, fingers, hips, knees, ankles, toes, and entire body." (Doc. 11-20 at 56) Upon examination, Dr. Cunanan determined Plaintiff had a decreased range of motion in her left should abduction and back flexion. (*Id.* at 58) However, Dr. Cunanan did not identify any tender points tested for fibromyalgia. (*See id.* at 56-58) Dr. Cunanan indicated Plaintiff's "current problems" also included major depression, finger pain, spinal osteoarthritis, fatigue, generalized convulsive epilepsy, joint pain, back pain, and low back pain. (*Id.* at 57) Plaintiff received a prescription of Neurontin for fibromyalgia and a handout on "Exercise Tips for Fibromyalgia." (*Id.* at 58) Through Plaintiff's date last insured in July 2016, she continued to report pain and stiffness. (*See, e.g.* Doc. 11-20 at 35, 42, 46) Despite these complaints, Dr. Cunanan did not identify supportive objective findings for fibromyalgia, such as tender points upon physical examination. (*Id.* at 36-37, 40, 44, 47)

Significantly, although Plaintiff was diagnosed with fibromyalgia, she does not argue that she meets either the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria for fibromyalgia. (*See* Doc. 14 at 6-7) Plaintiff does not identify any evidence that would support this conclusion. Dr. Cunanan did not identify "at least 11 positive tender points" in her objective findings and instead, merely noted in the subjective discussion of each visit where Plaintiff reported having pain. Plaintiff fails to identify medical evidence that other disorders that could have caused her reported pain were excluded, such as imaging and other laboratory tests…, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor." *See* SSR 12-p, 2012 WL 3104869 at *2-3. Finally, Dr. Cunanan did not offer a clear opinion that Plaintiff satisfied the ACR criteria for fibromyalgia. *Compare with Contreras,* 378 Fed. App'x at 658. Thus, Plaintiff fails to meet the burden of showing fibromyalgia was a medically determinable impairment. *See* SSR 12-p, 2012 WL 3104869 at *2-3 ("the agency "cannot rely upon [a] physician's

diagnosis alone"); *Hilda M. v. Saul*, 2020 WL 1330387 at *13 (N.D. Cal. Mar. 23, 2020) (a claimant has the burden to (1) "provide evidence that a licensed physician reviewed her medical history, conducted a physical examination, and made a fibromyalgia diagnosis" *and* (2) "[t]he physician must also provide evidence which satisfies [the 1990 ACR or 2010 ACR] diagnostic criteria").

### 2. Severity of Plaintiff's impairment

Assuming Plaintiff met the burden of show her fibromyalgia was a medically determinable impairment, she must next show the impairment was severe. *Bowen*, 482 U.S. at 153 (1987); 20 C.F.R. § 404.1520(c). The Ninth Circuit determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment "severe." Plaintiff failed to demonstrate that this impairment is severe. She does not identify any medical evidence that demonstrates fibromyalgia limits her "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). Because Plaintiff does not identify any functional limitations that may be attributed to fibromyalgia, she also fails to carry the burdens at step two. *See Bowen*, 482 U.S. at 153 (1987); 20 C.F.R. § 404.1520(c).

### 3. Fibromyalgia and Plaintiff's residual functional capacity

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2). Plaintiff contends, "the ALJ's failure to assess fibromyalgia as a medically determinable impairment led to a legally erroneous RFC." (Doc. 14 at 7) However, as discussed above, Plaintiff fails to demonstrate fibromyalgia was a medically determinable impairment under SSR 12-p.

Furthermore, Plaintiff fails to identify specific limitations related to fibromyalgia that she

believes should have been incorporated into the RFC by the ALJ. Previously, the Ninth Circuit "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" where "the RFC include[d] several physical limitations." *See Valentine v. Comm'r SSA*, 574 F.3d 685, 692 n.2 (9th Cir. 2009). In *Valentine*, the claimant asserted the ALJ failed to account for his knee and shoulder injuries in the RFC yet failed to identify "what other physical limitations follow[ed] from the evidence of his knee and should injuries, besides the limitations already listed in the RFC." *Id.* Likewise, here, the RFC included physical limitations to light work—including restrictions with lifting, carrying, balancing, crawling, kneeling, stooping, and reaching (Doc. 11-3 at 28-39)—and Plaintiff fails to identify additional limitations she believes should have been incorporated in the RFC.

District courts throughout the Ninth Circuit determined failure to identify specific limitations that should have been incorporated into an RFC is fatal to a claimant's challenge of the ALJ's RFC determination. *See, e.g., Juarez v. Colvin*, 2014 U.S. Dist. LEXIS 37745 at *15 (C.D. Cal. Mar. 20, 2014) (rejecting an argument that the ALJ erred in evaluating the claimant's limitations where she had "not specified or proffered evidence of any additional limitations from the arthritis that the ALJ failed to consider"); *Hansen v. Berryhill*, 2018 U.S. Dist. LEXIS 19489 (W.D. Wash. Feb. 6, 2018) ("Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error in the RFC assessment with the requisite specificity"); *Thomas v. Comm'r of SSA*, 2015 U.S. Dist. LEXIS 99338 at *21 (Dist. Or. Jul 30, 2015) ("Plaintiff does not cite to evidence of physical limitations stemming from these impairments beyond those already listed in his RFC. Without more specific information on how these conditions hinder Plaintiff, the Court declines to find the ALJ failed to account for Plaintiff's limitations").

Accordingly, the Court is unable to speculate as to the limitations Plaintiff believes the ALJ should have incorporated into the RFC, had she carried the burden to show fibromyalgia was a medically determinable impairment. *See Valentine*, 574 F.3d at 692 n.2; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting the Court "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant'")

### 4. Duty to develop the record

Plaintiff argues the ALJ had a duty develop the record and obtain additional evidence related to her fibromyalgia. (Doc. 14 at 7) The law is established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered" (*Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)), though only in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see* 20 C.F.R. § 416.912(e).

Here, there were no conflicts or ambiguities to be resolved, nor did the ALJ find the record was insufficient to make a disability determination regarding Plaintiff's impairments prior to her date last insured. Consequently, the ALJ's duty to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 948 (9th Cir. 2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make a disability determination); *Mayes*, 267 F.3d at 459-60. Because the ALJ did not have a duty to develop the record, Plaintiff's assertion that the ALJ erred by not obtaining additional medical evidence is without merit.

### B. Lay Witness Statement

Janet Dean Horn, Plaintiff's mother, submitted a letter dated August 31, 2017, which was more than a year after Plaintiff's date last insured. (Doc. 11-8 at 56) Ms. Horn reports that her daughter's medical problems include:

> [Fibromyalgia], Bipolar, Personality Disorder, PTSD, Seizures, low blood pressure, low blood sugar, fatigue, migraines, muscle spasms, muscle contractures, Depression, Anxiety, Delusional, blurred vision, eye pain, neck pain, lower black pain, shoulder pain from shoulder injury, numbness to both hands and feet, poor response to medication, difficult to sedate/anasthetic (sic), knots in muscles, stiff tendons, leg cramps, contractures in feet, body [tremors], unable to tolerate exposure to light whether it is nature or [artificial] lighting. Jaw stiffness, Jaws pop/crack, off balance/clumsy, nightmares, pain in both knees, [and] carpal tunnel syndrome.

(Doc. 11-8 at 56) She asserts these impairments cause "vomiting… all throughout the day" and Plaintiff to be in "constant pain all over her body/achy." (Doc. 11-8 at 56) According to Ms. Horn,

Plaintiff is "shaky all the time, which causes her not to be able to use [her] hands very well." (*Id.*) Ms. Horn reports Plaintiff also has "muscle weakness," "drops things," and "falls a lot." (*Id.*) Ms. Horn reports her daughter has "leg cramps similar to growing pains; all over body pain." (*Id.* at 57)  With respect to mental health, Ms. Horn asserts Plaintiff "makes a lot of mistakes [and] poor choices," including running "away from home/people." (*Id.* at 56)  Ms. Horn notes Plaintiff is moody, grouchy, argumentative, and "crying: all the time." (*Id.* at 56-57)

The ALJ must consider such statements from "nonmedical sources" in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 404.1513(a)(4); *Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("an ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members"). To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).  For example, an ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the record of the claimant's activity, and the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ noted that Ms. Horn "alleged limitations the claimant had on a daily basis with regard to her functional limitations." (Doc. 11-3 at 41)  The ALJ indicated he gave "limited weight" to the statement from Ms. Horn "because of its high degree of subjectivity, and lack of medically acceptable standards." (*Id.*)  Plaintiff contends these reasons were not legally sufficient, and the ALJ failed to identify proper germane reasons for rejecting Ms. Horn's statement. (Doc. 14 at 10)

1.   Subjectivity of the statement

Plaintiff asserts, "a finding that [lay witness statements] are highly subjective is not a germane basis for rejecting a lay witness opinion." (Doc. 14 at 10) The Ninth Circuit observed that "lay witness evidence, based on the personal knowledge and observations of friends and family members, regarding a claimant's symptoms, activities, and limitations, is inherently subjective." *Woodmass v. Berryhill*, 707 Fed. App'x 432, 436 (9th Cir. 2017) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)) Thus, the Court finds the ALJ erred in giving little weight to the statement from Ms. Horn based upon the statement's subjective nature.

### 2. Lack of medically acceptable standards

The Ninth Circuit determined that, in general, "the failure to meet medically acceptable standards is an invalid reason [to reject lay witness testimony], because the ALJ is required to consider 'observations by *nonmedical* sources about how impairments affect a claimant's ability to work.'" *Woodmass*, 707 Fed. App'x at 436 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

On the other hand, as Defendant observes, "Plaintiff's mother purported to 'list' the entirety her daughter's diagnoses or impairments (in an including 'but not limited to' fashion), which included fibromyalgia, bipolar disorder, personality disorder, PTSD, seizures, low blood pressure, muscle spasms, numbness, blurred vision, and carpal tunnel syndrome." (Doc. 19 at 23, citing Doc. 11-8 at 56) The Ninth Circuit determined an ALJ is not required to accept medical diagnoses identified by lay witnesses. *See Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984). The Court explained that "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) ("lay witness testimony is 'incompetent' when it consists of a medical diagnosis"). Because Ms. Horn was not qualified as a lay witness to make diagnoses, the ALJ was entitled to reject the list of impairments in the statement from Ms. Horn.

### 3. Harmless error

To the extent the ALJ erred in rejecting the statement from Ms. Horn, the Commissioner argues any error was harmless. (Doc. 19 at 22-23) The Commissioner observes that the ALJ rejected Plaintiff's testimony regarding the severity of her symptoms, and Plaintiff does not challenge the adverse credibility determination as an issue in her opening brief. (*Id.* at 23; *see also* Doc. 14 at 1) The Commissioner asserts:

> because Plaintiff's mother's statement merely corroborates what [Plaintiff] alleged—that she had pain throughout her body, migraines, seizures, tremors, problems with her hands, feet, and back, vision issues, as well as anger, depression, difficulty with memory, attention, and concentration, and that she would frequently cry and feel overwhelmed (*see* AR 38, 107-10, 115-18, 120-22, 126, 129-30, 132-37)—and does not provide any unique information or perspective, any error in discounting the statements would be harmless because they "did not describe any limitations beyond those [Plaintiff] herself described" and the ALJ otherwise properly discounted Plaintiff's subjective testimony, as discussed above. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012); *see Hanes v. Colvin*, 651 Fed.Appx. 703, 705 (9th Cir. 2016) (unpublished) (any error in rejecting husband's testimony was harmless because he "merely parroted her complaints").

(Doc. 19 at 23)

Plaintiff maintains the ALJ erred in rejecting the statement from Ms. Horn as subjective and lacking acceptable medical standards. (Doc. 20 at 5-6) Plaintiff asserts the "ALJ committed legal error by failing to consider Ms. Horn's opinion and explanations regarding the ways which Plaintiff's impairments impact her daily activities and functioning, and his failure to properly weigh Ms. Horn's statements and the identified functional limitations warrants remand for further consideration." (*Id.* at 6)

Plaintiff fails to identify any functional limitations from the statement of Ms. Horn that she believes should have been incorporated into the RFC, which is fatal to her claim of any error related to the RFC. *See Valentine*, 574 F.3d at 692 n.2; *Indep. Towers of Wash.*, 350 F.3d at 929. Ms. Horn did not identify specific limitations, and instead recounted only diagnoses and symptoms related to Plaintiff's current impairments in her statement.[3] (*See* Doc. 11-8 at 56) Because Ms. Horn did not provide any new information, and "the testimony of the lay witness encompassed only symptoms, any failure of the ALJ to adequately address that testimony does not affect the outcome of the case." *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 n.6 (9th Cir. 2005).

Also, any error addressing the statement from Ms. Horn was harmless because she did not provide significant or probative testimony[4], and the testimony would not affect the ALJ's ultimate conclusion related to Plaintiff's disability prior to her date last insured. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (opinion of a lay witness alone cannot provide the basis for a disability claim, as the opinion of a medial source is required to establish a medically determinable impairment). Accordingly, the Court finds that the ALJ did not commit reversible error in his evaluation of the lay witness testimony.

///

---

[3] It is undisputed the symptoms identified by Ms. Horn were similar to the symptoms to which Plaintiff testified, and the ALJ rejected. When the statement from a third party lay witness describes the same limitations as the claimant, "the ALJ's reasons for rejecting [the claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [the layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.")

[4] Ms. Horn's statement reveals that it was written in the present tense, which indicates she was addressing Plaintiff's current symptoms in August 2017. Because Ms. Horn addresses Plaintiff's current symptoms in August 2017—approximately a year after her date last insured—without any indication that Plaintiff had the same level of functioning for a year or more, the statement was "not necessarily relevant to the period at issue." *See Owens v. Colvin*, 2013 WL 1914407 (W.D. Wash. Apr. 3, 2013) (finding no error in giving less weight to opinion that "was not offered during the relevant period" and was "offered in the present tense").

**CONCLUSION AND ORDER**

For the reasons set for above, Plaintiff fails to show harmful errors by the ALJ, and the determination that Plaintiff is not disabled must be upheld by the Court.  Thus, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Charity Michelle Akin.

IT IS SO ORDERED.

Dated:   **August 31, 2020**              /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE